**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARIA TELESCA

                                                            Plaintiff

            - against -

SEASONS AT MASSAPEQUA HOME
OWNERS ASSOC. INC. and FAIRFIELD
MANAGEMENT CORP.

                                                            Defendants

24 Civ. 7771

**COMPLAINT**

**JURY DEMAND**

Plaintiff, by her attorney, James E. Bahamonde from the Law Offices of James E. Bahamonde, PC, and for her complaint against Defendants respectfully allege:

**STATEMENT OF CLAIMS**

1.      Plaintiff MARIA TELESCA bring this action for declaratory judgment, injunctive relief, and damages against Defendants for their disability discrimination, unlawful statements, failure to make a reasonable accommodation, and retaliation in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (hereinafter "FHA"), New York State Human Rights Laws, N.Y. Exec. Laws § 296, *et seq*., and Nassau County Administrative Code § 21-9 *et seq.*

2.      Instead of complying with decades old, well-settled law, Defendants have purposefully and willingly engaged in retaliation, intimidation, coercion, housing discrimination based on disability and failed to make reasonable accommodations.

3.      Plaintiff seeks declaratory, injunctive and equitable relief, as well as actual, nominal, compensatory damages, and fees and costs against Defendants.

4.      Plaintiff seeks punitive damages against each Defendant for their reckless and/or callous indifference to their rights under the Fair Housing Act, New York State Human Rights

Laws, and Nassau County Administrative Code.

## JURISDICTION AND VENUE

5.      That at all times hereinafter mentioned, Plaintiff MARIA TELESCA was, and is now, a resident of Massapequa, New York.

6.      Venue is proper in this Court because the real property where the events occurred exists in Nassau County.

7.      Venue is proper in this court because Plaintiff and both Defendants are residents of Nassau County.

8.      Venue is proper in this Court because Defendants' principal offices are located in Nassau County.

9.      Plaintiff invokes the jurisdiction of the Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613.

10.     The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act.

11.     The Court has supplemental jurisdiction over Plaintiff's State and County law claims pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, or omissions, giving rise to this action, including the unlawful practices alleged herein, occurred within the District.

## PARTIES

13.     During all relevant times, Plaintiff MARIA TELESCA has been a resident of Massapequa, Nassau County, New York.

2

14.     During the relevant times, Ms. TELESCA was diagnosed with a musculoskeletal condition known as Skeletal Dysplasia. This condition significantly affects bone growth, results in compressed nerves, impairment to equilibrium, knee and ankle bowing, and short limbs. Consequently, among other things, Ms. TELESCA has substantial limitations in her ability to walk, raise her legs, reach, grab, and drive.

15.     Ms. TELESCA resides in a unit within a multifamily condominium development named the Seasons of Massapequa. Ms. TELESCA has been, and continues to be, adversely affected by the acts, policies, and practices of Defendants and their agents.

16.     During all relevant times, Defendant Seasons at Massapequa Home Owners Assoc. Inc. (hereinafter "Seasons at Massapequa") is a domestic nonprofit corporation authorized by the Secretary of State of New York to do business in New York State with its principal county of business designated as Nassau County.

17.     Defendant Seasons at Massapequa consists of 210 townhomes and condominium units.

18.     Defendant Seasons at Massapequa is governed by a Board of Directors consisting of five Directors, all of whom are either elected or designated.

19.     During all relevant times, Defendant Fairfield Management Corp. is a domestic corporation authorized by the Secretary of State of New York to do business in New York State with its principal county of business designated as Nassau County.

20.      Upon information and belief, and during all relevant times, Defendant Seasons at Massapequa retained Defendant Fairfield Management Corp. as the management company of the multifamily condominium development controlled by Defendant Seasons at Massapequa.

3

## STATUTORY SCHEME

21.     Under the Fair Housing Act, New York State Human Rights Law, and Nassau County Administrative Code, a housing provider is required to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling.

22.     Likewise, the Fair Housing Act, New York State Human Rights Laws, and Nassau County Administrative Code make it illegal to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any person in the exercise or enjoyment of any right granted under the FHA.

23.     To encourage owners of multifamily dwelling complexes to be active supervisors of their subordinates, the Fair Housing Act imposes vicarious liability upon principals or employers for the acts of their agents or employees. Consequently, a principal is legally responsible for the acts, conduct, and statements of their agent.

## FACTUAL BACKGROUND

24.     During all relevant times, Defendants did not have a written or established policy or procedure for a disabled owner or resident to request reasonable accommodations or modifications.

25.     During all relevant times, Ms. TELESCA's skeletal and mobility impairments were obvious because she has short limbs and has informed defendants of her disabling limitations. Defendants were also aware of Ms. TELESCA's skeletal impairment because they have interacted with her on multiple occasions.

26.     Defendant Seasons at Massapequa owns and maintains the community center and

4

its amenities included therein. The community center is a building centrally situated to all residential homes which contains a clubhouse, outdoor patio, fitness center, noncommercial kitchen, and outdoor pool. All homeowners, residents, and their respective family members and guests have a right of use and enjoyment, and access to, the community center and its amenities.

27.    Board member Ronald Branch called Ms. Telesca a "troublemaker" when she requested a reasonable accommodation.

28.    In October 2023, Ms. TELESCA was availing herself of the aforementioned accommodations and amenities provided by Defendants to owners and residents in the Seasons' community center building. During her visit, Ms. TELESCA seated herself on a couch in the community center. Because of Ms. TELESCA's short stature caused by her skeletal dysplasia, her legs and feet extend no further than the edge of the cushion she was seated upon. Board member Ronald Branch instructed Ms. TELESCA to take her feet off the couch. In response, Ms. TELESCA explained to Mr. Branch that she cannot help if her feet are on the couch because her legs are short and cannot reach the floor while seated. Subsequently, Ms. TELESCA requested from the property manager, Joanne Collado, a reasonable accommodation of the Seasons providing her with accessible furniture if Mr. Branch did not want her feet on the couch. Defendants ignored her request but nevertheless, every time Ms. TELESCA has been in the community center and seated on the couch, Mr. Branch insists she take her feet off the couch.

29.    Mr. Branch called Ms. Telesca a "troublemaker" when she requested a reasonable accommodation.

30.    In making the aforementioned statements, Mr. Branch acted with the consent of, under the control of, and/or within his actual and/or apparent authority as agent of Defendant Seasons at Massapequa.

31.     In 2023, Ms. TELESCA also requested from the Defendants a reasonable accommodation of a one–step footstool with a three-foot handrail on either side to access the gym equipment at the community center, as pictured below.



32.     The operable parts of several pieces of equipment are currently positioned at a height that is not accessible to Ms. TELESCA.

33.     Defendants denied Ms. TELESCA's request for a footstool with a handrail and instead provided a two-step ladder with an extremely narrow step and no side handle. Consequently, the accommodation offered is ineffective, as it does not provide adequate stability and additionally impairs Ms. TELESCA's equilibrium. Ms. TELESCA communicated this to the president of the board, Jeffrey Squeri. However, he responded, "that's all you're getting."

34.     Mr. Squeri acted with the consent of, under the control of, and/or within his actual and/or apparent authority as agent of Defendant Seasons at Massapequa.

35.     During all relevant times, Defendants have failed to engage Ms. TELESCA in an interactive process to determine the necessary and reasonable accommodations required because of her disability, as required by law.

**Pool at the Community Center**

36.     In or around June 2024, Defendants raised the release latch for a pool gate at the community center pool, making it inaccessible to Ms. TELESCA. Before this alteration, the

release latch was accessible to Ms. TELESCA, allowing her to independently enter and exit the pool area. Upon learning of the alteration, Ms. TELESCA requested that Defendants lower the release latch back to its previous height. In response, board member Donald Jenkins declined and challenged Ms. TELESCA to pursue legal action if she disagrees with the change.

37.    Mr. Jenkins acted with the consent of, under the control of, and/or within his actual and/or apparent authority as agent of Defendant Seasons at Massapequa.

38.    During all relevant times, Defendants have failed to engage Ms. TELESCA in an interactive process to determine the necessary and reasonable accommodations required because of her disability, as required by law.

39.    Shortly after Ms. TELESCA requested the aforementioned reasonable accommodations, she experienced retaliation and intimidation by Defendants. They began to closely scrutinize the landscaping guidelines contained within the homeowners association community rules as they pertain to Ms. Telesca and her unit. On or about September 5, 2024, Defendants inspected the exterior of her condominium unit and demanded the removal of an "unauthorized plant" located in front of her unit, a grouping of sunflowers. This demand was not based on any established landscaping guideline issued by the board in 2023. Furthermore, Defendants do not enforce the landscaping guidelines uniformly among similarly situated residents.

**Accessible Parking and Curb Ramps at the Seasons at Massapequa**

40.    Throughout the multifamily dwelling complex, Defendants do not provide a sufficient number of accessible parking spaces.

41.    A majority of the parking spaces designated as "accessible" are, in fact, inaccessible as they have incorrect dimensions, improper access aisles, no parking signage, and

inaccessible or no curb ramp at all.

42.    During all relevant times, Defendants have modified, altered, and created parking spaces they assert to be accessible, but which do not meet the accessibility requirements.

43.    In 2024. Ms. TELESCA observed that contractors were incorrectly modifying and altering the parking spaces at the development. As such, she requested that the contractors correctly size the parking spaces and access aisles throughout the development to meet the required standards. Ms. TELESCA then informed board member Donald Jenkins about the issue, stating that the dimensions do not comply with the accessibility standards set forth by the FHA and New York State Human Rights Law. Ms. TELESCA requested that Mr. Jenkins correct the sizing of the accessible parking spaces, as improperly sized spaces presents greater difficulty for her to use. This request constitutes a request for a reasonable accommodation.

44.    In response, Mr. Jenkins declined the request and instructed Mr. TELESCA to have her attorney contact "my [the Board's] attorney." Subsequently, Defendant Seasons at Massapequa issued a notice to all residents stating that they are prohibited from contacting or approaching contractors, under the threat of a fine if residents did not comply.

45.    Mr. Jenkins acted with the consent of, under the control of, and/or within his actual and/or apparent authority as agent of Defendant Seasons at Massapequa.

46.    Despite being aware that the designated "accessible" parking spaces they created or maintained were not compliant with the federal and State accessibility standards, Defendants have deliberately chosen to disregard these requirements.

47.    Plaintiff frequently travels throughout the multifamily development and parks in other parking spaces which are designated as "accessible."

48.    Plaintiff has frequently encountered designated accessible parking spaces that

are either inaccessible or difficult to use due to a missing or improperly sized access aisle.

49.    During all relevant times, Defendants have failed to engage Ms. TELESCA in an interactive process to determine the necessary and reasonable accommodations required because of her disability, as required by law.

## LEGAL CLAIMS
### FIRST CAUSE OF ACTION
### (Violations of the Fair Housing Act, 42 USC 3604 et seq.)

50.    Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

51.    Plaintiff is an "aggrieved person" as defined in 42 U.S.C. §§ 3602(i) and 3613(a)(1)(A).

52.    Plaintiff is disabled as defined in 42 U.S.C. §§ 3602(h).

53.    Plaintiff has a record of having a physical or mental impairment which substantially limits one or more major life activities.

54.    Plaintiff has been regarded as having a physical or mental impairment which substantially limits one or more major life activities.

55.    Defendant Seasons at Massapequa Home Owners Assoc. Inc.'s multifamily dwelling complex located in Massapequa contains four or more units. As such, it is a covered multifamily dwelling as defined in U.S.C. § § 3604(f)(7).

56.    Defendant Seasons at Massapequa is a covered multifamily dwelling designed and constructed for first occupancy after March 13, 1991.

57.    The public use and common use portions of Defendant Seasons at Massapequa's multifamily dwelling are not readily accessible to and usable by Plaintiff in violation of 42 U.S.C. § 3604(f)(3)(C)(i).

9

58.     Defendants have discriminated against Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with a dwelling because of a disability of that person, or a person residing in that dwelling, or any person associated with that person in violation of 42 U.S.C. § 3604(f)(2).

59.     Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B).

60.     As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, Plaintiff has suffered, continue to suffer, and will in the future suffer, great loss of housing opportunity, great and irreparable injury, physical and emotional distress and pain-- including but not limited to great levels of fear, anxiety, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, insomnia, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

61.     Defendants' discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c), Plaintiff is entitled to punitive damages.

### SECOND CAUSE OF ACTION
### (Coercion, Intimidation, Threaten, and Interference in Violation of the Fair Housing Act)

62.     Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

63.     The conduct of Defendants constitutes retaliation, coercion, intimidation,

threatening, and interference with Plaintiff in the exercise or enjoyment of, or on account of, Plaintiff having exercised or enjoyed any right granted or protected by the Fair Housing Act in violation of 42 U.S.C. § 3617.

64.    Plaintiff engaged in a protected activity by making requests for reasonable accommodations.

65.    Requesting a reasonable accommodation is a protected activity.

66.    Defendants were aware Plaintiff had engaged in protected activities.

67.    Defendants took adverse action against Plaintiff because she requested a reasonable accommodations.

68.    As a direct and proximate result of Defendants' retaliation, coercion, intimidation, threaten, and interference in violation of the Fair Housing Act, Plaintiff has suffered, continues to suffer, and will in the future suffer, great loss of housing opportunity, great and irreparable injury, physical and emotional distress and pain-- including but not limited to great levels of fear, anxiety, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, insomnia, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

69.    Defendants' discriminatory actions and retaliation were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under 42 US.C. § 3613(c)(1), Plaintiff is entitled to punitive damages.

### THIRD CAUSE OF ACTION
**(Violations of New York State Human Rights Law)**

70.    Plaintiff and Defendants are "persons" as defined in New York State Executive

Law § 292(1).

71.     The community center is a "housing accommodation" as defined in New York

State Executive Law § 292(10).

72.     Defendant's multifamily dwelling located at is a "multifamily dwelling" as

defined in New York State Executive Law § 292(12).

73.     Plaintiff Ms. TELESCA has a disability as defined in New York State Executive

Law § 292(21).

74.     Defendants have discriminated against Plaintiff on the basis of disability in the

terms, conditions or privileges of rental or lease of any such housing accommodation or in the

furnishing of facilities or services in connection therewith in violation of New York State

Executive Law §§ 296(5)(a)(2) and 296(5)(b)(2).

75.     Defendants and their agents have aided, abetted, incited, compelled, or coerced

the doing of any of the acts forbidden under New York State Human Rights Law, or attempted to

do so in violation of New York State Executive Law § 296(6).

76.     Defendants have printed, circulated, or caused to be printed or circulated any

statement or publication which has expressed, directly or indirectly, any limitation, specification

or discrimination as to disability, or any intent to make any such limitation, specification or

discrimination in violation of New York State Executive Law §§ 296(5)(a)(3) and 296(5)(b)(3).

77.     Defendants and their agents have retaliated or discriminated against Plaintiff

because she has opposed any practices forbidden under New York State Human Rights Law in

violation of New York State Executive Law § 296(7).

78.     Defendant Seasons at Massapequa and their agents have refused to make

reasonable modifications to the common use portions of the dwelling in violation of New York

State Human Rights Law in violation of New York State Executive Law § 296(18)(2).

79.    Defendant Seasons at Massapequa was designed and constructed for first occupancy after March 13, 1991.

80.    Defendant Seasons at Massapequa failed to design and construct dwellings in accordance with the accessibility requirements for multifamily dwellings found in New York State building code in violation of New York State Executive Law § 296(18)(3).

81.    The public use in common use portions of the Seasons at Massapequa are not readily accessible to and usable by Plaintiff in violation of New York State Executive Law § 296(18)(3)(i).

82.    As a direct and proximate result of Defendants' unlawful discrimination in violation of New York State Executive Law, Plaintiff has suffered, continues to suffer, and will in the future suffer, great loss of housing opportunity, great and irreparable injury including physical and emotional distress and pain -- including but not limited to great levels of fear, anxiety, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

83.    Defendants' discriminatory actions in violation of New York State Executive Law were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under New York Executive Law § 297(10), Plaintiff is entitled to punitive damages.

## FOURTH CAUSE OF ACTION
(Violations of Nassau County Administrative Code § 21-9 *et seq*.)

84.    Plaintiff realleges and incorporates by this reference all allegations set forth in this

Complaint as if fully set forth herein.

85.     Plaintiff is in a protected status as that term is defined by Nassau County Administrative Code § 21-9.2.

86.     Plaintiff and Defendants are "persons" as defined in Nassau County Administrative Code § 21-9.2(j).

87.     At all times stated herein, Ronald Branch, Donald Jenkins, Joanne Collado and Jeffrey Squeri acted as agents for Defendants as defined in Nassau County Administrative Code § 21-9.7(b)(1)

88.     Plaintiff Ms. TELESCA has a disability as defined in Nassau County Administrative Code § 21-9.2(e).

89.     The community center is a "housing accommodation" as defined in Nassau County Administrative Code § 21-9.7(b)(6).

90.     Defendants have treated Ms. TELESCA differently on the basis of her actual or perceived disability in violation of Nassau County Administrative Code § 21-9.2(d).

91.     Defendants have discriminated against or harassed Ms. TELESCA in the terms, conditions or privileges of the sale, rental, lease¸ or occupancy of any such housing accommodations or in the furnishing of facilities or services in connection therewith because of the actual or perceived protected status of Ms. TELESCA as defined in Nassau County Administrative Code § 21-9.7(c)(1)(ii).

92.     Defendants have aided, abetted, incited, compelled, or coerced the doing of any of the acts forbidden under Nassau County Administrative Code, or attempted to do so in violation of Nassau County Administrative Code § 21-9.7(c)(3).

93.     Defendants have coerced, intimidated, threatened, harassed, or interfered with

Plaintiff (i) in the exercise or enjoyment of, or because he or she exercised or enjoyed any right granted or protected by this title; (ii) because he or she aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by this title; or (iii) because of the protected status of a person with whom such person has or is perceived to have a relationship or association use in violation of Nassau County Administrative Code § 21-9.7(c)(4).

94.     Notice of the civil action will be delivered in person to the County Attorney of Nassau County within 10 days of filing.

95.     As a direct and proximate result of Defendants' discriminatory conduct in violation of Nassau County Administrative Code, Plaintiff has suffered, continues to suffer, and will in the future suffer, great loss of housing opportunity, great and irreparable injury, physical and emotional distress and pain-- including but not limited to great levels of fear, anxiety, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

96.     Defendant discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under Nassau County Administrative Code § 21-9.7(d)(3)(i), Plaintiff is entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

A.    Plaintiff seeks declaratory judgment, declaring that the conduct of Defendants constitutes violations of the Fair Housing Act Amendments, New York State Executive Law, and Nassau County Administrative Code.

B.    Defendants' agents, employees, and successors, and all other persons in active concert or participation be permanently enjoined from discriminating on the basis of disability or perceived disability against any persons in violation of the Fair Housing Act of 1968, as amended, New York State Executive Law, and Nassau County Administrative Code, including an injunction prohibiting the following:

i.    Discrimination in violation of the Fair Housing Act, New York State Executive Law, and Nassau County Administrative Code;

ii.    Housing discrimination based on disability;

iii.    Inferior terms, conditions, or privileges of a dwelling because of disability;

iv.    Aiding, abetting, coercing, intimidating threatening, interference and discriminating based on disability;

C.    Permanent injunction requiring Defendants to

i.    Engage Ms. TELESCA in an interactive process to determine the necessary reasonable accommodations;

ii.    Make the necessary reasonable accommodations;

iii.    Make alterations to its common areas to comply with the federal and state accessibility standards;

iv.    Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

16

v.    Train all board members, management, agents, and employees on fair housing laws;

D.    Have the court retain jurisdiction over the Defendants until the Court is satisfied that their unlawful practices, acts and omissions no longer exist and will not reoccur.

E.    Award such damages to Plaintiff as will fully compensate for injuries caused by Defendants' unlawful practices in violation of the Fair Housing Act;

F.    Award such damages to Plaintiff as will fully compensate for injuries caused by Defendants' unlawful practices in violation of New York State Executive Law;

G.    Award such damages to Plaintiff as will fully compensate for injuries caused by Defendants' unlawful practices in violation of Nassau County Administrative Code;

H.    Award punitive damages to Plaintiff for Defendants' violation of the Fair Housing Act, New York State Executive Law, and Nassau County Administrative Code;

I.    Award Plaintiff reasonable attorney's fees, costs, and expenses incurred in prosecuting this action; and

J.    Grant Plaintiff such other further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial on the merits by jury pursuant to Fed. R. Civ. P. 38.


Dated: November 6, 2024

**LAW OFFICES OF JAMES E. BAHAMONDE, P.C.**

By: /s/ James E. Bahamonde
       James E. Bahamonde
       2501 Jody Court
       North Bellmore, NY 11710-1940
       Tel. (646) 290-8258
       james@civilrightsny.com
       *Attorney for Plaintiff*